IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE<br>VALENCE TECHNOLOGY, INC.,<br>DEBTOR,<br><br>VALENCE TECHNOLOGY, INC.,<br>APPELLANT AND<br>CROSS APPELLEE,<br><br>V.<br><br>KPMG CORPORATE FINANCE LLC,<br>APPELLEE AND<br>CROSS APPELLANT. | CAUSE NO. A-14-CA-0595-LY<br>BANKRUPTCY NO. 12-11580-CAG<br>(CHAPTER 11) |

**MEMORANDUM OPINION AND ORDER**

Before the court is the above styled and numbered cause. Appellant Valence Technology Inc. ("Valence") contends that the bankruptcy court erred in rendering its Order Granting In Part and Denying In Part the Final Fee Application of KPMG Corporate Finance LLC, Investment Bankers to the Debtor, For Compensation and Reimbursement of Expenses For the Period from February 6, 2013 Through November 14, 2013, signed April 14, 2014 (Bankruptcy Clerk's Document No. 566) ("Final Fee Order").[1]  Appellee KPMG Corporate Finance, LLC ("KPMG") cross appeals, contending that, although the bankruptcy court properly granted a portion of KPMG's fee request, the bankruptcy court erred in denying another portion of KPMG's fee request. This court ordered briefing and, on September 11, 2014, held oral argument at which all parties were represented by

---

[1] Following an evidentiary hearing on January 16, 2014, the bankruptcy court allowed the parties to submit additional briefing. On April 9, 2014, with all parties represented by counsel, the bankruptcy court held a hearing and rendered findings of fact and conclusions on the record in open court, which the bankruptcy court incorporated by reference into the written Final Fee Order.

counsel. Having considered the parties' briefing and arguments, the bankruptcy court's orders and case file, and the applicable law, the court affirms the bankruptcy court's Final Fee Order.[2]

**Background**

Valence is a developer and manufacturer of large-scale rechargeable lithium batteries. Valence's growth was financed primarily through secured loans of approximately $69.1 million from investor Carl Berg's company, Berg & Berg. When Valence could no longer make its loan payments, Valence filed a voluntary petition for relief under the Bankruptcy Code, Chapter 11, on July 12, 2012. Valence began investigating ways to reorganize while continuing to operate as a debtor-in-possession business. Valence hired attorneys and accountants with expertise in debt restructuring. Valence was also interested in new equity investment. Valence solicited and received proposals from several investment banking firms willing to assist Valence with such efforts. Most of the investment bankers required payment of retainers of at least $35,000 per month, lengthy minimum terms of months, and percentage fees of up to 6% of any new equity or capital raised. However, two firms, Roth Capital Partners, LLC ("Roth") and KPMG, reached employment agreements with Valence, and Valence, in turn, requested that the bankruptcy court authorize their employment. *See* 11 U.S.C. §§ 327(a), 328(a). The bankruptcy court granted Valence's request, approved the terms of Valence's Engagement Letters with Roth and KPMG, and allowed employment of Roth and KPMG until confirmation of Valence's reorganization plan.[3]

---

[2] Similar issues regarding a related Final Fee Order are raised in a related appeal from the bankruptcy court, *Valence Technology, Inc. v. Roth Capital Partners, LLC*, Cause No. A-14-CA-0596-LY (W.D. Tex.). Although the appeals are not consolidated, counsel for the parties in both appeals participated at the September 11 oral argument.

[3] Consistent with each of the Engagement Letters dated February 6, 2013, the court refers to the KMPG letter as the "Agreement."

The bankruptcy court confirmed a reorganization plan for Valence on November 18, 2013. Under the confirmed plan, Berg & Berg and Valence agreed to the following: (1) Berg & Berg would convert $50 million of its prepetition secured loan to 100% of the stock in the reorganized Valence in exchange for Valence canceling all of its existing equity; (2) Berg & Berg agreed to extend Valence's maturity date of the remaining prepetition secured loan of approximately $19.1 million under a new note; and (3) Berg & Berg agreed to provide Valence a new $20 million loan for operating capital.

After confirmation of the plan, and pursuant to the Agreement, KPMG applied to the bankruptcy court seeking an additional fee, a "Success Fee."[4] KPMG argued that it was entitled to this additional fee based on a total of $70 million of consideration, which consisted of the $50 million debt-for-equity conversion and the $20 million loan for operating capital.[5]

Valence opposed KPMG's application, arguing that the Agreement expressly excluded all debt-for-equity exchanges from the types of transactions that would trigger the additional fee–the Success Fee–provision, and further, under the Agreement's terms, Berg & Berg's $20 million loan to the reorganized Valence for operating capital did not qualify as equity or equity-linked financing; rather it was an operations loan, which was beyond the scope of the Agreement. The parties agreed before the bankruptcy court, as they do here, that the Agreement is governed by New York contract law and that the terms of the Agreement are unambiguous.

---

[4] KPMG also requested, and the bankruptcy court awarded, KPMG's related expenses. Valence did not object to KPMG's expenses and they are not at issue here.

[5] The portion of the Berg & Berg transaction that extended the maturity date for the remaining $19.1 million secured loan to Valence is not at issue in this action.

3

In its findings and conclusions, the bankruptcy court noted that the court considered nothing beyond the four corners of the Agreement. The court found that KPMG was entitled to fee a Success Fee of 1.25%, based on the $50 million debt-for-equity conversion only, less the $30,000 Valence paid KPMG as engagement and retainer fees, for a total recovery of $595,000. The bankruptcy court denied KPMG's request for an additional fee of a 1.25% Success Fee as to the $20 million operating-capital loan, concluding that the loan was debt-financing and not within the scope of the Agreement.[6]

Valence appeals the bankruptcy court's decision, arguing that based on the Agreement KPMG is not entitled to a Success Fee. KPMG, by cross-appeal, argues that the bankruptcy court was correct in awarding the Success Fee on the $50 million debt-for-equity conversion, but erred by ruling that KPMG was not entitled to an additional 1.25% Success Fee with regard to the $20 million loan to Valence for operating capital. KPMG argues that it is entitled to the 1.25% Success Fee of the combined $70 million, for a total of $875,000, less the $15,000 Engagement Fee and $15,000 Retainer Fee, for a net award of $845,000.

**Jurisdiction**

The bankruptcy court's Final Fee Order is a final, appealable order over which this court has appellate jurisdiction. *See* 28 U.S.C. § 158(a)(1); *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002).

---

[6] The terms of KPMG and Roth's Agreements are the same. Both KPMG and Roth sought additional fees under each of their respective Agreements. At the parties' request, the bankruptcy court held one evidentiary hearing, and granted KPMG's request that it be bound by the bankruptcy court's ruling on Roth's Fee Application.

4

**Standard of Review**

In reviewing a bankruptcy court's decision, the court functions as an appellate court, applying the standards of review generally applied in federal appeals: a bankruptcy court's findings of fact are reviewed for clear error and the court's conclusions of law are reviewed *de novo*. *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003). A finding is clearly erroneous and reversible only if, based on the entire record, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *Id.* In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses. *Id.*; *see also Young v. National Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir. 1993). The issues on appeal here involve interpreting a contract, which are subject to *de novo* review. *Fina, Inc. v. ARCO*, 200 F.3d 266, 268 (5th Cir. 2000).

**The Agreement**

Central to the appeal is the Agreement, which provides that KPMG was retained to "act as a placement arranger in a possible Private Placement [] of equity or equity-linked financing (the "Securities")" but that KPMG was "not being hired by [Valence] to provide restructuring or bankruptcy advice and such advice falls outside of [the] scope of services." The Agreement provides that if Valence desires restructuring or other bankruptcy advice, that advice is subject to a separate engagement letter with terms and fees.

The Agreement defines "Securities" as "equity or equity-linked financing." The Agreement defines "Private Placement" as,

> the sale of Securities in exchange for cash or other consideration not including a public offer. It is intended that the Private Placement shall be conducted in a way so that the offers and sales of the

> Securities will be exempt from registration under the Securities Act of 1933, as amended (the "Securities Act"), or the securities laws of any state or other jurisdiction in which the Securities are offered. In acting as a placement arranger for the Private Placement, KPMG will seek to complete the Private Placement using reasonable efforts, acting as [Valence]'s arranger and not as a principal.

As compensation for the services to be provided by KPMG, the Agreement provides that Valence will pay KPMG a nonrefundable engagement fee of $15,000, an initial retainer fee of $15,000, and an additional fee or "Success Fee" "in an amount equal to 2.5% of the Private Placement Value" less the previously paid engagement and retainer fees, "but in no event less than a minimum success fee of $500,000 (the 'Minimum Success Fee')" if KPMG's efforts result in a Private Placement. Further, the Agreement provides,

> 'Private Placement Value' shall mean the aggregate amount of cash and the fair market value (on the date of closing) of any other consideration received by [Valence] in any Private Placement, excluding any consideration received by [Valence]'s creditors in satisfaction of claims or debts existing on the date hereof.

Immediately following this sentence and in the same paragraph, the Agreement provides,

> Any consideration received from Berg & Berg, Carl Berg or any other entity affiliated with Carl Berg, Johnson Controls, SAIF, Enertech Capital, Via Motors or any of their respective affiliates (collectively, the "Identified Parties") will be subject to a Success Fee of 1.25% (and not 2.5%), but still subject to the Minimum Success Fee.

Finally, KPMG's Standard Terms and Conditions are incorporated into the Agreement by reference, including that the Agreement is governed by and is to be construed in accordance with New York law.

**Agreement is unambiguous**

The parties agreed at the evidentiary hearing before the bankruptcy court and at oral argument before this court that the Agreement is unambiguous and should be enforced according to its terms, without resort to parole evidence. Under New York law, written agreements are construed in accordance with the parties' intent and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records*, 780 N.E. 2d 166, 170 (N.Y. 2002). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* In considering the bankruptcy court's findings of fact for clear error and reviewing the conclusions of law *de novo*, this court construes the Agreement without considering parole evidence.

**Arguments**

Valence contends that because the Agreement provides that KPMG was employed only for the purpose of finding new equity, the bankruptcy court erred in awarding KPMG any additional fee beyond the engagement and retainer fees. Valence argues KPMG is only entitled to recover an additional fee for "any consideration . . . subject to a Success Fee" and based on that language, Berg & Berg's $50 million debt-for-equity conversion and the new $20 million operating loan must qualify for a Success Fee. Because the Agreement defines Success Fee as a percentage of "Private Placement Value" based on a "Private Placement transaction," Valence argues neither the Berg & Berg debt-for-equity conversion nor the operating loan qualify, and KPMG is not entitled to an additional fees.

KPMG responds it is entitled to a Success Fee of $595,000, as awarded by the bankruptcy court, and also an additional fee of a 1.25% Success Fee for the operating loan of $20 million to

Valence because the Agreement explicitly provides that Valence's receipt of any consideration from Berg & Berg, one of the "Identified Parties," is subject to a 1.25% Success Fee. KPMG argues that the Agreement could not be more specific, "[a]ny consideration received from Berg & Berg . . . will be subject to a Success Fee of 1.25%. . . ." Therefore, argues KPMG, Berg & Berg's packaged transaction–conversion of $50 million of secured debt into 100% of the stock of the reorganized Valence, and its $20 million post-confirmation operations loan–qualifies for the Success Fee of 1.25%. Further, KPMG argues the Berg & Berg packaged transaction is a Private Placement–it was a sale of Securities (of equity or equity-linked financing) in exchange for other consideration–under the Agreement.

**Analysis**

Issue is joined as to whether the two prongs of the Berg & Berg transaction qualify under the Agreement as a Private Placement, as urged by KPMG or whether, as argued by Valence, the two prongs of the Berg & Berg transaction constitute only a restructuring of the bankrupt Valence and an extension of loan financing, both of which Valence contends are beyond the scope of the Agreement.

The Agreement was "negotiated by sophisticated and well-counseled parties" and in such situations, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Worcester Creameries Corp. v. City of New York*, 861 N.Y.S.2d 198, 201 (N.Y. App. Div. 2008) (quoting *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004)). Further, in construing contractual language, the court "accord[s] that language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties

sought to accomplish." *See Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir. 1990) (applying New York law and omitting internal citations).

The payment terms of the Agreement are derived strictly from the four corners of the Agreement. *See Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013). Additionally, "definitive, particularized contract language takes precedence over expression of intent that are general, summary, or preliminary." *John Hancock Mut. Life Ins. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1982) (applying New York law).

To give meaning to all of the provisions in the Agreement that address the Success Fee, the bankruptcy court found that the parties envisioned two scenarios: (1) a Private Placement to a party other than an Identified Party–the Agreement expressly provides that this scenario could not include any consideration from Valence's creditors by including the phrase, "excluding any consideration received by Valence's creditors in satisfaction of claims or debts existing on the date hereof"–and such a placement would result in a 2.5% Success Fee; and (2) any consideration received from an Identified Party would result in a 1.25% Success Fee. The Agreement's use of the defined term Success Fee, indicates that although the amount would be reduced to 1.25%, the remaining portion of the defined term, Success Fee would remain applicable. Therefore, for KPMG to qualify for the reduced Success Fee under the second scenario, there must have been a private placement, with private placement value, as those terms were defined in the Agreement, and the private placement must include equity or equity-linked financing. The court cannot write-out this second scenario for payment of an additional fee to KPMG.

Under the Agreement, the portion of the Berg & Berg transaction regarding the $50 million conversion of debt for 100% of stock qualified as a Private Placement with Private Placement Value.

Further, under the Agreement's definition of Private Placement, there was a sale of securities in exchange for other consideration, specifically Berg & Berg stepped out of its secured-creditor status for Valence, converted a portion of its secured debt in exchange for Valence giving up all of its equity, and Berg & Berg owning 100% of the stock in the reorganized Valence. This court concludes that the bankruptcy court's conclusion that KPMG is entitled to a Success Fee of 1.25% of the $50 million conversion of secured debt to 100% of the stock in the reorganized Valence in exchange for Valence giving up all of its equity rights in the reorganized Valence was proper in light of the bankruptcy court's findings of fact.

With regard to the $20 million operations loan, although consideration given by Berg & Berg to the reorganized Valence, there was no equity involved in the exchange nor was the loan linked to any equity. Rather the loan was, as the bankruptcy court determined, provided to Valence to support the reorganized Valence's operations going forward. The court finds that the bankruptcy court's conclusion that KPMG was not entitled to a Success Fee with regard to the $20 million operations loan was also proper.

**Conclusion**

Having addressed Valence and KPMG's appellate contentions, the court concludes that the bankruptcy court's findings of fact related to KPMG's final fee application are not clearly erroneous. Additionally, having reviewed *de novo* the bankruptcy court's conclusions of law regarding KPMG's final fee application,

**IT IS ORDERED** that the bankruptcy court's Order Granting In Part and Denying In Part the Final Fee Application of KPMG Corporate Finance LLC, Investment Bankers to the Debtor, For Compensation and Reimbursement of Expenses For the Period from February 6, 2013 Through

November 14, 2013, signed April 14, 2014 (Bankruptcy Clerk's Document No. 566) is **AFFIRMED**.

SIGNED this \_\_\_31st\_\_\_ day of March, 2015.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE